IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TYGANDA GILMORE, | No. 4:20-CV-01291 |
| Petitioner, | (Judge Brann) |
| v. | |
| MR. QUAY, WARDEN, | |
| Respondent. | |

MEMORANDUM OPINION

MARCH 9, 2021

Presently before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, filed by Tyganda Gilmore ("Gilmore" or "Petitioner"), a federal inmate in the custody of the Federal Bureau of Prisons ("BOP") currently housed at the United States Penitentiary at Allenwood, White Deer, Pennsylvania.[1] Gilmore seeks immediate release to a Residential Reentry Center ("RRC") pursuant to the Second Chance Act and the First Step Act. He also contends that the BOP's failure to transfer him to an RRC violates due process and that Administrative Procedures Act.[2]

The petition is ripe for disposition. For the reasons set forth below, the petition will be denied.

---

1   Doc. 1.
2   *Id.* at 2, 6-8.

I.  BACKGROUND

Gilmore is serving a 188 month term of imprisonment imposed by the United States District Court for the District of South Carolina for Possession with Intent to Distribute and Distribution of a Quantity of Cocaine Base.[3] His current projected release date is April 9, 2021.[4]

On July 2, 2020, Gilmore's Unit Team considered him for RRC placement pursuant to the Second Chance Act utilizing the five factor criteria set forth in 18 U.S.C. § 3621(b) and BOP Program Statement 7310.04, and concluded that he was ineligible for RRC placement.[5] Specifically, the Unit Team considered the likelihood of bed space, the nature of his offense, participation in education and self-improvement classes, sentencing court made recommendations, and the Sentencing Commission's policy concerning RRC placement. The Unit Team had also documented that there had been a detainer warrant lodged by the Richland County, South Carolina, Sheriff's Office and noted that "[s]hould the detainer be removed, he will be reevaluated for RRC placement."[6]

Gilmore pursued administrative relief based on his belief that the detainer warrant had been resolved and he would not be arrested.[7] In response, on April 27,

---

[3] Doc. 13-1, at 3, ¶¶ 1, 3, Declaration of Erin Frymoyer, BOP Attorney assigned to Allenwood Consolidated Legal Center, which includes USP-Allenwood.
[4] https://www.bop.gov/inmateloc/
[5] Doc. 13-1, at 7, 14-18.
[6] *Id.* at 7, 9.
[7] Doc. 14-2, at 11, 12.

2020, BOP officials advised him that they had confirmed that the warrant remains active.[8] Thereafter, on September 4, 2020, a review of information regarding inmate Gilmore contained in the National Crime Information Center (NCIC) database revealed that he is subject to a warrant issued by the Richland County, South Carolina Sheriff's Office.[9]

Attached to Gilmore's Traverse are affidavits filed in the matter of *Gilmore v. Family Court of Richland County, et al.*, No. 1:18-cv-2676-JFA-SVH, an action he filed in the United States District Court for the District of South Carolina attacking the detainer warrant.[10] The first is the Affidavit of Sandy Ros ("Ros"), the Deputy Family Court Administrator for Richland County, South Carolina, dated January 24, 2019. Ros identifies the warrant as having been issued by Family Court Judge Dorothy M. Jones, based on Gilmore's failure to pay child support.[11] Ros verified that the warrant remained valid and outstanding, despite the fact that the Richland County Family Court did not pursue out-of-state extradition.[12] Also attached is the Affidavit of April Sampson ("Sampson"), Deputy Solicitor for the Fifth Judicial Circuit, South Carolina. Sampson indicates that "[f]ollowing a comprehensive search of the Solicitor's Office's internal

---

[8] *Id.* at 12.
[9] Doc. 13-1, at 4, ¶ 6.
[10] Doc. 14-1, at 1-4; *see also,* electronic docket at https://ecf.scd.uscourts.gov/
[11] Doc. 14-1, at 1-3.
[12] *Id.* at 3, ¶¶ 8, 9.

database, there exist no outstanding or pending charges, bench warrants, or detainers against Petitioner. Petitioner's most recent charges were disposed [of] in 2004, at which time he received probation."[13] The district court, in adopting a report and recommendation, concluded that Gilmore was not entitled to relief because the detainer entered by the Family Court is based on civil contempt for failure to pay child support, rather than any criminal charge, and that there was no basis upon which to quash the detainer.[14]

In accordance with BOP Program Statement 7310.04, Community Corrections Center Utilization and Transfer Procedures, inmates "with unresolved pending charges, or detainers, which will likely lead to arrest, conviction, or confinement" are ordinarily excluded from participating in community corrections programs such as RRC placement.[15]

## II.   STANDARDS OF REVIEW

Gilmore challenges the denial of his pre-release placement *via* 28 U.S.C. § 2241. Section 2241 "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence."[16] A habeas corpus petition filed pursuant to 28 U.S.C. § 2241 is the appropriate means

---

[13]   *Id.* at 4.
[14]   *Gilmore v. Family Court of Richland County, et al.*, No. 1:18-cv-2676-JFA-SVH, Docs. 36, 41.
[15]   Doc. 13-1, at 20, 21.
[16]   *Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001).

for a federal inmate to challenge a BOP decision to limit or exclude their placement in an RRC.[17] Review of the RRC placement decision is limited to whether the BOP abused its discretion.[18]

## III. DISCUSSION

The Supreme Court of the United States has consistently held that a prisoner has no constitutional right to be confined in a particular place.[19] The Attorney General—and by delegation the BOP—has exclusive authority and discretion to designate the place of an inmate's confinement.[20]

On April 9, 2008, the Second Chance Act of 2007, Pub.L. No. 110-199, Title II, § 251, 122 Stat. 657, 697, codified at 18 U.S.C. §§ 3621, 3624, went into effect. The Second Chance Act provides:

>   (c) Prerelease custody.—

---

[17] *See Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 243-44 (3d Cir. 2005).
[18] *Vasquez v. Strada*, 684 F.3d 431, 434 (3d Cir. 2012) (citing *Barden v. Keohane*, 921 F.2d 476, 478 (3d Cir. 1991).
[19] *See McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Sandin v. Conner*, 515 U.S. 472, 478 (1995) ("the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons.").
[20] *See Woodall*, 432 U.S. at 251. *See also United States v. Logan*, 2020 WL 2559955, *2 (W.D. N.C. May 20, 2020) ("The Defendant alternatively moves the Court to order his release to home confinement due to the ongoing COVID-19 pandemic. This request, however, must also be denied. The discretion to release a prisoner to home confinement lies solely with the Attorney General."); *United States v. Delacruz*, 2020 WL 3405723, *4 (M.D. Pa. June 19, 2020) ("[T]he Court is without authority to control the BOP's placement of Defendant—the Court can neither directly assign Defendant to home confinement nor direct the BOP to do so.").*Moore v. United States Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973*); Ledesma v. United States*, 445 F.2d 1323, 1324 (5th Cir. 1971).

> (1) In general.—The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> (2) Home confinement authority.—The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.[21]

The Act requires the BOP "to make an individual determination that ensures that the placement is 'of sufficient duration to provide the greatest likelihood of successful reintegration into the community.'"[22] In doing so, the BOP must consider: "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence [ ] recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission."[23]

Likewise, the First Step Act does not mandate that the BOP place prisoners in a halfway house for six months or any other period. Under the current version of 18 U.S.C. § 3624(c), as amended by the Second Chance Act of 2007, the BOP is authorized to consider placing an inmate in a community correctional facility for up to twelve months. However, a prisoner is neither entitled nor guaranteed such

---

[21] 18 U.S.C. § 3624(c).
[22] *Wilson v. Strada*, 474 F. App'x 46, 46–47 (3d Cir. 2012) (quoting 18 U.S.C. § 3624(c)(6)(C)).
[23] 18 U.S.C. § 3621(b); *see also Vasquez*, 684 F.3d at 433.

placement for any minimum amount of time.[24]  Such placement decisions are solely within the discretion of the BOP.  The First Step Act did not alter this rule.

In a nutshell, when considering an individual's eligibility for pre-release placement in an RRC, the BOP is required to ensure that decisions are made: (A) consistent with the five factors in 18 U.S.C. § 3621(b); (B) on an individualized basis; and (C) so that the duration of the placement period gives the inmate the greatest likelihood of successful community reintegration.[25]

The record in this case clearly establishes that Gilmore's Unit Team gave him individualized consideration consistent with the five factors of section 3621(b).  They found the likelihood of bed space to be adequate, considered the nature of his offense, Possession with Intent to Distribution of Cocaine Base, recognized that he participated in education and self-improvement classes, documented that the sentencing court made no recommendations, and noted that the Sentencing Commission has no policy concerning RRC placement.[26]  They also indicated that he had a detainer and, should the detainer be removed, his RRC eligibility would be reevaluated.[27]

---

[24]  18 U.S.C. § 3624(c). *See Woodall*, 432 F.3d 235 at 240; *See also Schmutzler v. Quintana*, No. CV 5: 19-046-DCR, 2019 WL 727794, at *2 (E.D. Ky. Feb. 20, 2019) (collecting cases).
[25]  18 U.S.C. § 3624(c)(6).
[26]  Doc. 13-1, at 7.
[27]  To the extent that the Unit Team considered the civil detainer, Respondent notes in his response that "[a]lthough Gilmore's unit team mistakenly referred to a 'detainer' which is no longer lodged, the outstanding warrant has the same effect as a detainer, as both represent outstanding charges, and weigh against his RRC placement pursuant to BOP Program Statement 7310.04. *See Id.*, Attach. C, at 11-12 (ordinarily inmates with unresolved pending charges are excluded

After reviewing Gilmore's petition and the applicable statutes, I find that the BOP has the discretion to determine if, and when, to transfer him to RRC. Consistent with 18 U.S.C. § 3621(b), the BOP individually considered Gilmore under the factors relevant to RRC placement.  His disagreement with the BOP's RRC placement recommendation does not establish a constitutional violation, as nothing in the Second Chance Act, First Step Act, or § 3621(b) entitles an inmate to any guaranteed placement in an RRC.[28]

Moreover, a petitioner complaining about a BOP assignment is not entitled to judicial relief for an alleged "violation of his Fifth Amendment right to due process because 'the failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest'."[29]

---

from RRC placement)." (Doc. 13, pp. 4, 5, n.2).  I find that it was clearly within the Unit Team's discretion to take into consideration the civil detainer.

[28] *See Woodall*, 432 F.3d at 244–51 (holding in exercising its discretion to make halfway house placement decisions, the Bureau must consider the factors set forth in § 3621 (b); "[h]owever, that the [Bureau] may assign a prisoner to a halfway house does not mean that it must."); *Levine v. Apker*, 455 F.3d 71, 80 (2d Cir. 2006) (finding Congress's use of the language "may designate" in § 3621(b) endows the BOP with broad discretion); *see Beckley v. Miner*, 125 F. App'x 385, 389 (3d Cir. 2005) (holding "[i]t is well settled, and the parties agree, that the Bureau has nearly exclusive jurisdiction to classify and transfer prisoners.").

[29] *Assaad v. Ashcroft*, 378 F.3d 471, 475 (5th Cir. 2004) (quoting *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999) (citing *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981) ) ); accord *Nativi–Gomez v. Ashcroft*, 344 F.3d 805, 808 (8th Cir. 2003); see also *Munoz v. Ashcroft*, 339 F.3d 950, 954 (9th Cir. 2003) ("Since discretionary relief is a privilege ..., denial of such relief cannot violate a substantive interest protected by the Due Process clause."); cf. *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) ("[A] statute which 'provides no more than a mere hope that the benefit will be obtained ... is not protected by due process.' ") (alteration in original) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 11 (1979)).

Lastly, because the BOP's placement decisions, including determinations regarding halfway house and home confinement placement, are expressly insulated from judicial review, the provisions of the Administrative Procedures Act ("APA") do not apply.[30]

## V. CONCLUSION

Based on the foregoing, I will deny the § 2241 Petition.

An appropriate Order follows.

                                   BY THE COURT:

                                   *s/ Matthew W. Brann*
                                   Matthew W. Brann
                                   United States District Judge

---

[30] 28 U.S.C. § 3625 ("The provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter."). *Cf. Woodard v. Quintana*, No. 5:15-cv-307-KKC, 2015 WL 7185478, at *5-6 (E.D. Ky. Nov. 13, 2015).